UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN SYTSMA,

        Plaintiff,                                     Hon. Paul L. Maloney

v.                                                      Case No. 1:11-CV-226

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age when her insured status expired and 56 years of age on the date of the ALJ's decision. (Tr. 21, 26, 102). Plaintiff successfully completed high school, as well as two years of college, and worked previously as a sales representative. (Tr. 42, 115).

Plaintiff applied for benefits on January 12, 2007, alleging that she had been disabled since January 1, 1983, due to a heart condition. (Tr. 102-03, 112, 114). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 64-101). On March 4, 2009, Plaintiff appeared before ALJ John Flanagan, with testimony being offered by Plaintiff and vocational expert, Rich Riedl. (Tr. 28-62, 99). In a written decision dated May 14, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 21-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 1987. (Tr. 21); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**RELEVANT MEDICAL HISTORY**

In 1969, Plaintiff "underwent repair of an ostium primum defect."[1] (Tr. 215).

X-rays of Plaintiff's chest, taken on January 28, 1988, revealed "mild cardiomegaly." (Tr. 324). On January 29, 1988, Plaintiff participated in a echocardiogram examination the results of which revealed "a trivial amount of mitral regurgitation," but "no other evidence of valvular heart disease." (Tr. 321). On February 1, 1988, Plaintiff participated in an exercise stress test during which she exhibited "fine exercise tolerance" with "no chest pain." (Tr. 326). The results of this examination were "normal" with "no electrocardiographic evidence of ischemia." (Tr. 326). X-rays of Plaintiff's chest, taken on January 16, 1990, were "essentially negative" with "some left ventricular predominance," but "no measurable cardiomegaly." (Tr. 312).

On April 4, 2002, Plaintiff was examined by Dr. Bruce Masselink. (Tr. 193-94). Plaintiff reported that she was experiencing swelling and erythema of her left lower extremity. (Tr. 193). An examination revealed a "marked amount" of edema in Plaintiff's calf, but the doctor observed no evidence of venous insufficiency or deep venous thrombosis. (Tr. 193). On August 9, 2002, Plaintiff participated in a venous Doppler ultrasound examination of her left lower extremity the results of which were "negative." (Tr. 192). Treatment notes dated February 3, 2003, reveal that Plaintiff's left lower extremity was "doing fine." (Tr. 170).

On August 5, 2003, Plaintiff participated in an echocardiogram examination the results of which revealed: (1) normal left ventricular size and systolic function without regional wall

---

[1] During normal fetal development, there exists an opening between the two upper chambers of the heart (the atria). *See Atrial Septal Defect (ASD)*, available at http://www.cts.usc.edu/atrialseptaldefect.html (last visited on February 3, 2012). Oxygenated blood from the mother is delivered to the fetus via this opening in the heart. An atrial septal defect occurs when this opening in the heart fails to close following birth. An ostium primum defect is one type of atrial septal defect. Ostium primum defects "are probably the most complicated [atrial septal] defect to repair because they are associated with abnormalities of the two adjoining heart valves." *Id.*

motion abnormalities; (2) moderate mitral regurgitation; (3) moderate biatrial enlargement; (4) mild tricuspid regurgitation; (5) mild right ventricular enlargement; and (6) moderate pulmonary hypertension. (Tr. 223).

On September 24, 2003, Plaintiff was examined by Dr. Masselink. (Tr. 164). An examination of Plaintiff's left lower extremity revealed "some swelling and erythema and some dependent edema and mild tenderness over the anterior tibial region and posteriorly." (Tr. 164). The doctor observed that Plaintiff "is doing fine" and should "continue with her water aerobics exercise, compression socks and elevation whenever she can." (Tr. 164).

Treatment notes dated February 4, 2004, reveal that Plaintiff "is really doing very nicely as far as her leg is concerned" and "she is asymptomatic." (Tr. 161). Dr. Masselink observed that Plaintiff "has made quite a bit of improvement" and "should do well with just continuing with elevation and exercising and compression stocking therapy." (Tr. 161).

On June 7, 2004, Dr. Masselink reported that Plaintiff was "doing fine with no particular problems." (Tr. 158). On August 26, 2004, Plaintiff participated in a venous Doppler study the results of which revealed "no evidence of deep venous thrombosis [in Plaintiff's] left lower extremity." (Tr. 154). X-rays of Plaintiff's chest, taken on April 20, 2005, revealed "no acute cardiopulmonary disease is evident." (Tr. 284).

On May 3, 2005, Plaintiff underwent a left and right heart catheterization procedure the results of which revealed: (1) mild to moderate pulmonary hypertension; (2) normal coronary arteries; (3) "low normal" left ventricular function; and (4) no significant aortic stenosis. (Tr. 220-21). Treatment notes dated May 23, 2005, reveal that Plaintiff was experiencing "congestive heart failure, most likely on the basis of a valvular dysfunction." (Tr. 235). On June 15, 2005, Plaintiff

underwent surgery to perform a mitral valve replacement. (Tr. 213-14). On June 24, 2005, Plaintiff had a new pacemaker implanted. (Tr. 203-04). Treatment notes dated July 26, 2005, indicate that Plaintiff "has been doing very well" and that her "heart sounds good." (Tr. 211).

X-rays of Plaintiff's chest, taken on September 19, 2005, revealed "mild cardiomegaly," but "no acute process." (Tr. 198). Treatment notes dated September 20, 2005, reveal that Plaintiff's "heart is in a regular rhythm" with "no abnormal sounds." (Tr. 209). X-rays of Plaintiff's chest looked "great" with "no effusion." (Tr. 209). The doctor reported that, "overall I am extremely pleased with [Plaintiff's] post-operative course." (Tr. 209).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date her insured status expired, Plaintiff suffered from: (1) valvular heart disease; (2) ostium primum septal defect, status post repair; and (3) cardiomyopathy, post pacemaker implementation, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-23). With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity to perform the full range of light work.[3] (Tr. 23). A vocational expert testified that if limited to the full range of light work, Plaintiff would

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

still be able to perform the duties of a sales representative as such work is generally performed. (Tr. 58-59). The ALJ concluded that as of the date Plaintiff's insured status expired she retained the ability to perform her past relevant work as a sales representative. (Tr. 23-26). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

Plaintiff failed to file a brief in support of her appeal. Moreover, other than to advance the vague assertion that it "was not based on substantial evidence," Plaintiff has failed to identify any alleged defect or error with the ALJ's decision. As previously noted, Plaintiff bears the burden through step four of the sequential analysis, the step at which the ALJ denied Plaintiff's claim for benefits.

As the ALJ observed, aside from evidence regarding Plaintiff's 1969 heart surgery the record contains no evidence from the period prior to the date her insured status expired. While the record contains medical evidence concerning the period immediately following the expiration of Plaintiff's insured status, such fails to suggest that Plaintiff was then experiencing, or had previously experienced, functional limitations beyond that recognized by the ALJ. While the medical evidence concerning the period from 2002-2005 suggests that Plaintiff's condition appreciably worsened during this time period, there is nothing in this evidence suggesting that Plaintiff was impaired to an extent greater than that recognized by the ALJ prior to the expiration of her insured status.

Finally, while the Court must read Plaintiff's pro se pleadings indulgently, it cannot act as counsel for Plaintiff or attribute to Plaintiff arguments which do not find their genesis in Plaintiff's pleadings. Nevertheless, the Court has thoroughly reviewed the record to determine whether the ALJ's decision suffers from any obvious defects or deficiencies. This review revealed

nothing which calls into question the ALJ's decision making process, the legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, while the Court concedes that Plaintiff may be *presently* disabled, the ALJ's determination that Plaintiff was not disabled prior to the expiration of her insured status is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 21, 2012         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge